IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

NICHOLAS HUFFMAN,

    Plaintiff,

v.                                              CIVIL ACTION NO. 3:16-8637

BRANCH BANKING & TRUST COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 31). The issues presented have been fully briefed, and the motion is now ripe for review. For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion.

**I.    Background**

Plaintiff brought suit against Defendant for alleged violations of the Telephone Consumer Protection Act (TCPA), the West Virginia Consumer Credit and Protection Act (WVCCPA), common law negligence, and common law invasion of privacy. *See Pl.'s Second Am. Compl.*, ECF No. 27. Plaintiff alleges that he became in arrears to a debt owed to Defendant. *Id.* at ¶ 8. Subsequently, Defendant engaged Plaintiff in telephone calls and written communications to collect on the debt. *Id.*

Plaintiff alleges that on March 1, 2016, he mailed a letter to CT Corporation (CT), Defendant's registered agent, specifying that he had retained an attorney to represent him on the alleged debt. *Id.* at ¶ 9. The letter further indicated that Plaintiff withdrew his consent to be contacted directly and provided Defendant with the contact information of his attorney. *Id.*; *see*

*also Letter by Nicholas Huffman*, ECF No. 31-1, at 4. Plaintiff alleges that Defendant continued to call Plaintiff on his cell phone multiple times per day using an automatic telephone dialing system. *Pl.'s Second Am. Compl.*, ECF No. 27, at ¶ 10. Plaintiff asserts that the calls totaled at least forty-four calls after Defendant had received notice of attorney representation. *Id.* at ¶ 16. Plaintiff alleges that Defendant intended to annoy, abuse, or harass Plaintiff by engaging in these calls after receiving notice. *Id.* at ¶ 17.

Plaintiff filed the instant case on September 7, 2016, and the Second Amended Complaint contains four separate counts. *See generally id.* Count I charges Defendant with violating the TCPA by calling Plaintiff with artificial or prerecorded voices without Plaintiff's express consent in violation of 47 U.S.C. § 227(b)(1)(A). *Id.* at ¶¶ 24-29. Count II alleges violations of the WVCCPA, stating that Defendant engaged in unreasonable and abusive conduct by continuing to call Plaintiff after he revoked consent. *Id.* at ¶¶ 30-32. Specifically, the Complaint cites West Virginia Code sections 46A-2-125(d) for calling repeatedly or at unusual times with the intent to annoy, abuse, or oppress; 46A-2-128(e) for communicating with Plaintiff after having written notice of attorney representation; and 46A-2-127 for failing to disclose the name of the business entity demanding money. *Id.* at ¶ 31. Count III alleges common law negligence, citing Defendant's failure to train and supervise its employees to prevent violations of the above listed statutes. *Id.* at ¶¶ 33-36. Lastly, Count IV asserts a claim for common law invasion of privacy, citing the expectation of privacy to be free from harassing phone calls. *Id.* at ¶¶ 37-42. Plaintiff seeks statutory damages, treble damages, general damages, attorneys' fees and costs, and injunctive relief. Defendant moved for summary judgment on all four claims.

**II.     Legal Standard**

To obtain summary judgment, the moving party must show that no genuine issue as to any

material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "Mere speculation by the non-movant cannot create a genuine issue of material fact" to avoid summary judgment. *JKC Holding*, 264 F.3d at 465.

### III. Discussion

Defendant's Motion argues against each of Plaintiff's claims, stating that Plaintiff cannot point to a genuine issue of material fact to preclude summary judgment. The Court will address each of Defendant's arguments in turn.

#### a. Count I: TCPA Claim

Plaintiff's first count challenges Defendant's tactics to collect the alleged debt as a violation of the TCPA. The TCPA states, in relevant part, that it is unlawful "to make any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to the called party's cell phone number. 47 U.S.C. § 227(b)(1)(A)(iii) (2015). It is further unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call … is exempted by rule or order by the Commission." 47 U.S.C. § 227(b)(1)(B) (2015).

In both of these sections, the phone calls are prohibited unless the consumer presents prior express consent. Courts have consistently held that a consumer gives prior express consent when the consumer provides the cell phone number to the creditor in an application or other communication. *See, e.g.*, *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 419 (E.D.N.Y. 2013); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011); *see also In re Rules & Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 559 (Jan. 4, 2008) ("[W]e clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."). The Federal Communications Commission (FCC) has further clarified that debt collection calls fall under the exemption language of § 227(b)(1)(B). *See In re Rules & Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8773 (Oct. 16, 1992) ("Whether the call is placed by or on behalf of the creditor, prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do

not transmit an unsolicited advertisement."). Therefore, Plaintiff's claim in Count I must be based off the calls made to his cell phone number as expressed in § 227(b)(1)(A).

Although this section does not provide an adequate mechanism to revoke the previously provided express consent, courts have recognized that consumers can revoke consent to be called on their cell phones. *See, e.g.*, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013) (citing reasons to find consent revocable in TCPA, including common law concept that consent can be revoked and how silence in statute favors consumer). The parties do not dispute this notion, and the Court agrees that Plaintiff can revoke his consent to be called on his cell phone by properly communicating the revocation to Defendant.

Defendant, therefore, argues that summary judgment turns on whether Defendant received the alleged letter informing Defendant of attorney representation and consent revocation. *See Def.'s Mem. of Law in Supp.*, ECF No. 32, at 5. In the attached affidavit, Amy McLaren, an employee of CT, attests that CT does not have documentation showing that the company received Plaintiff's letter. *See Aff. of Amy McLaren*, ECF No. 31-1, at 2. McLaren details the procedures used when receiving attorney representation letters, and the subsequent database searches did not provide any results for Plaintiff's case. *Id.* Accordingly, CT could not have forwarded this information to Defendant to ensure proper receipt of the information. *Def.'s Reply*, ECF No. 34, at 2. Defendant argues that even if Plaintiff can prove that Plaintiff mailed the letter and CT received it, Plaintiff cannot support a claim against Defendant because Defendant never received the letter. *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 5. Defendant argues that CT's classification as its registered agent does not bind the knowledge of revocation to Defendant. *See Def.'s Reply*, ECF No. 34, at 3. The Court disagrees.

The West Virginia Business Corporation Act specifies that "[t]he registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation." W. Va. Code § 31D-15-1510(a) (2008).[1] Defendant argues that since the TCPA is silent as to revocation of consent, a statutory provision permitting service to CT does not exist. *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 6. Although the TCPA does not detail the procedures to revoke consent, the Court is satisfied with the statute's interpretation and other West Virginia statutes allowing similar service to bind Defendant to CT's purported receipt of Plaintiff's letter. The FCC has provided clear guidance that consumers can revoke consent under the TCPA, explaining that "[c]onsumers may revoke consent at any time and *through any reasonable means*." 30 FCC Rcd. 7961, 7965 (July 10, 2015). Even though this guidance does not appear within the TCPA statute itself, sending notice to a corporation's registered agent clearly meets the reasonable means standard explained by the FCC. The Court is most convinced, however, by the statutory mandate under the WVCCPA that details effective notice of attorney representation as one "sent to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State." W. Va. Code § 46A-2-128. Although the WVCCPA and the TCPA are separate statutes, Plaintiff's letter details the information required to give effective notice of attorney representation and effective revocation of consent. This letter, as directed under the WVCCPA, must be sent to the creditor's registered agent if one is registered with the West Virginia Secretary of State. When the letter detailing attorney representation contains the same information necessary to effectively revoke consent, it makes sense to send the letter to the place

---

[1] The Court agrees with Defendant's analysis that "permitted by law" has been consistently interpreted to mean statutory law. *See Def.'s Mem. of Law in Supp.*, ECF No. 32, at 6 n.4.

dictated in one statute when the other is silent.² Accordingly, the Court finds that CT, as Defendant's registered agent, appropriately serves as Defendant's agent for purposes of revoking consent under the TCPA.

Moreover, Defendant's supplied affidavit further supports the relationship between CT and Defendant in that CT receives similar attorney representation letters routinely. According to McLaren, "such letters make up a substantial percentage of the process received by CT Corporation in its West Virginia Office." *See Aff. of Amy McLaren*, ECF No. 31-1, at 2. If CT routinely processes similar attorney representation letters, the Court is perplexed as to why consumers would continue to send notice to CT and CT would continue to accept them if the corporation was not a registered agent for purposes of revoking consent. Defendant listed its Notice of Process address with the West Virginia Secretary of State as the CT Corporation. If Plaintiff followed the appropriate procedures and mailed the letter to that listed address, the Court has no difficulty in finding that the information binds Defendant to CT's knowledge of revocation. The question of whether the letter was properly sent and received, as discussed below, is a jury question. As the Court finds that CT's alleged receipt of the letter serves as reasonable means to revoke consent, the Court need not discuss Plaintiff's argument that he orally informed Defendant of his revocation. Accordingly, Defendant's Motion for Summary Judgment on Count I is **DENIED**.

    b. **Count II: WVCCPA Claims**

As the Complaint differentiates three violations of the WVCCPA, the Court will examine the facts presented for each separately.

---

² Plaintiff also describes how Defendant's website gave no contradictory information on where communications should be sent. *Pl.'s Resp.*, ECF No. 33, at 2. This provides further justification to allow notice to be sent to the registered agent.

### i. Oppression and Abuse

Section 46A-2-125 details the manner in which phone calls and other communications can be made when collecting a debt. Specifically, the section states that "[n]o debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due." W. Va. Code § 46A-2-125 (2015). Unreasonable oppression and abuse, in part, consists of "[c]alling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress, or threaten any person at the called number." W. Va. Code § 46A-2-125(d) (2015). A reasonable person standard judges whether a debt collector violates this section. *Id.* The statute specifies that inconvenient times include calls made before 8:00 a.m. and after 9:00 p.m. *Id.*

Defendant argues that the evidence cannot support a claim for a violation under § 46A-2-125(d). *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 12-14. Defendant provided the call log for Plaintiff's file, which indicates the dates and times that Defendant called Plaintiff. *See Exh. C*, ECF No. 31-3. None of the times fall outside the guidelines for convenient times in the statute, and the total number of calls per week does not reach thirty. *Id.* Plaintiff argues that even if the data does not support the statutory guidelines of more than thirty calls per week or inconvenient times, a jury should decide whether the calls meet what a reasonable person would find acceptable. *See Pl.'s Resp.*, ECF No. 33, at 6. Plaintiff asserts that any alleged violation of this section of the statute must be sent to the jury. The Court disagrees.

Reading the amended statute compared to the prior version demonstrates how the legislature crafted a more specific guideline to prove oppressive and abusive conduct. The state legislature amended the statute in 2015 to detail when the timing of a phone call would be deemed

oppressive or abusive.³ To prove a violation under the amended version of the statute, a plaintiff must meet the threshold of thirty calls per week or inconvenient or unusual timing. After meeting this threshold determination, a jury would decide whether a defendant had the requisite intent to be liable for the violation. A court need not task a jury to determine the oppressive conduct when a plaintiff cannot make a showing that the calls were so numerous or untimely to meet the threshold listed in the statute. Allowing otherwise would relegate the statute's specifications insignificant. *See Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 687 (W. Va. 1999) ("a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute"). The reasonable person standard, therefore, must apply to the determination of whether a defendant had the requisite intent—not to whether the conduct was abusive. District Court Judge Irene C. Berger of this district recently came to the same conclusion. *See Biser v. Mfrs. & Traders Tr. Co.*, 211 F. Supp. 3d 845, 854 (S.D.W. Va. 2016) (Berger, J.) ("Rather than a jury considering whether the facts as a whole show that the debt collector called repeatedly or continuously, as those terms are normally defined, with the intent to annoy, abuse, oppress, or threaten, the court or jury will now simply add up the number of calls made in a specified time period."). The amended legislation holds Plaintiff to a more stringent test rather than allowing a jury to determine what broadly constitutes oppressive and abusive conduct.

---

³ Prior to the 2015 amendment, the statute read that it would be a violation to "caus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." W. Va. Code § 46A-2-125(d) (1974). As Plaintiff's cited cases that interpret this statute before the 2015 amendment indicate, the determination of whether a phone rang repeatedly or continuously was a question tasked for the jury. *See Duncan v. JP Morgan Chase Bank, N.A.*, No. 5:10-cv-01049, 2011 WL 5359698, at \*4 (S.D.W. Va. Nov. 4, 2011) (interpreting previous version of statute to allow for fact-intensive inquiries to be judged on case-by-case basis).

Accordingly, Plaintiff needs to demonstrate that the timing of Defendant's phone calls was oppressive or abusive by establishing more than thirty calls per week, more than ten conversations per week, or calls made at unusual or inconvenient times. Defendant provided the Court with the phone call log, and Plaintiff does not dispute the accuracy of the information. *See Exh. C*, ECF No. 31-3. The log details that no seven-day period contained more than thirty phone calls or more than ten phone calls involving conversation. *Id.* Further, all phone calls were placed in the statute's designation of convenient hours.[4] *Id.* Accordingly, the Court finds that there are no genuine issues of material fact for this claim, and summary judgment in favor of Defendant is appropriate. The Court, thus, **GRANTS** Defendant's Motion for this claim within Count II.

### ii. Unfair or Unconscionable Means

The second cited section of the WVCCPA details violations regarding a debt collector's methods that rise to the level of unfair or unconscionable means. A violation of § 46A-2-128 includes communicating "with a consumer more than seventy-two hours after the debt collector receives written notice, either on paper or electronically, from the consumer or his or her attorney that the consumer is represented by an attorney" for the debt. W. Va. Code § 46A-2-128(e) (2015). The notice must state the name, address, and telephone number of the attorney, and the consumer must send the notice "to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State." *Id.*

Defendant argues that because Defendant never received the letter identifying attorney representation, Defendant cannot be liable under this statute for continuing communication. *See Def.'s Mem. of Law in Supp.*, ECF No. 32, at 9. This argument largely follows the argument made

---

[4] As noted by Defendant, the only call falling outside this specified time period took place on July 9, 2016 at 10:01 p.m., but the call was an inbound call made by Plaintiff. *See Exh. C*, ECF No. 31-3, at 4.

in support of granting summary judgment for Count I, relying on the fact that CT could not bind Defendant to its purported receipt of the letter. The Court has already addressed this argument, finding that CT, as Defendant's registered agent, could bind Defendant to knowledge of Plaintiff's attorney representation and revocation of consent.[5] Accordingly, the only question left for the Court to decide is whether Defendant, through CT, actually received the letter.

There is a rebuttable presumption that "a letter properly addressed, stamped and mailed" is subsequently delivered to the person or entity listed as the addressee. *Dunn v. Watson*, 566 S.E.2d 305, 308 (W. Va. 2002); *see also Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) (detailing the rebuttable presumption under the mailbox rule). Although sending a document through certified mail creates a stronger presumption, a letter sent through regular mail will still create a presumption, albeit a weaker one. *See Lupyan*, 761 F.3d at 319. Defendant argues that before the presumption can apply, Plaintiff must prove that the letter was actually placed in the "regular place of mailing." *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 10 n.6 (quoting *Geise v. Nationwide Life & Annuity Co. of America*, 939 A.2d 409, 423 (Pa. Super. Ct. 2007)).

---

[5] Defendant extensively argues that statutory construction requires the Court to read the statute as requiring the Defendant to physically receive the letter from Plaintiff. *See Def.'s Mem. of Law in Supp.*, ECF No. 32, at 9. Although the statute states that a debt collector must receive the written notice, the next sentence specifies that an effective notice must be sent to the debt collector's registered agent if listed at the office of the West Virginia Secretary of State. W. Va. Code § 46A-2-128(e) (2015). When interpreting a statute, the Court must look to the statute as a whole and not an isolated part. *See R.H. Donnelley Corp. v. United States*, 641 F.3d 70, 76 (4th Cir. 2011) ("[W]e consider all the words employed and do not review isolated phrases." (citation omitted)). The Court reads the statute's sections together as requiring Plaintiff to send notice to the registered agent, which should presumably provide direct notice back to the debt collector. Because the statute requires Plaintiff to send effective notice to the registered agent—and only to the debt collector directly if a registered agent is not listed—the Court will hold Defendant liable if Plaintiff can prove that CT received the written notice.

The Court finds that Plaintiff has established the evidence required to apply the rebuttable presumption in this case. The attached affidavit of Sydney Whittington, an employee of Plaintiff's counsel's law firm, attested to the normal business practice for sending mail to registered agents for clients, including specific information pertaining to Plaintiff. *See Aff. of Sydney Whittington*, ECF No. 33-1; *see also Lupyan*, 761 F.3d at 319 (explaining that evidence for presumption includes sworn statement of affiant with personal knowledge of business procedures). Whittington explained that Plaintiff's letter was sent to Defendant's registered agent "in the ordinary course of business via US Postal service" and that Plaintiff never received the document in return for failed delivery. *Id.* at 2. Defendant submitted the affidavit of McLaren to attest that CT never received the document Plaintiff purported to send. *See Aff. of Amy McLaren*, ECF No. 31-1. This sworn statement consequently rebuts the presumption that the letter was successfully delivered. *See Abdullah v. Ocwen Loan Servicing, Inc.*, No. 5:12-cv-369, 2014 WL 4851760 (M.D. Ga. Sept. 29, 2014) ("direct testimony of nonreceipt, particularly in combination with evidence that standardized procedures are used in processing claims, is sufficient to support a finding that the mailing was not received"). The final determination of whether the letter was received is a question of fact and must be left for the jury. *See Lupyan*, 761 F.3d at 319 (explaining that after presumption is rebutted, the receipt "must be weighed by the jury"). Accordingly, as a genuine issue of material fact exists, summary judgment is inappropriate, and the Court, thus, **DENIES** Defendant's Motion for this claim in Count II.

### iii. Fraudulent, Deceptive, or Misleading Representations

The final WVCCPA section alleged prevents a debt collector from misrepresenting itself to the consumer. The statute specifies that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain

information concerning consumers." W. Va. Code § 46A-2-127. Defendant argues that Plaintiff has failed to supply any facts to support this claim, justifying judgment as a matter of law in its favor. *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 14. Plaintiff agrees to the dismissal of this claim, asking for dismissal without prejudice. *Pl.'s Resp.*, ECF No. 33, at 7. The Court agrees with Defendant that dismissal with prejudice is appropriate since Plaintiff cannot prove his claim after discovery has closed. *See Def.'s Reply*, ECF No. 34, at 5 n.1. Accordingly, the Court **GRANTS** Defendant's Motion for this claim in Count II.

### c. Count III: Negligence Claims

Plaintiff's third count alleges negligence, specifically citing Defendant's alleged failure to train, supervise, monitor, or control its employees to prevent violations of the TCPA and the WVCCPA. *Pl.'s Second Am. Compl.*, ECF No. 27, at ¶¶ 33-36. Defendant argues that these claims fail as a matter of law because Plaintiff cannot sustain a claim under negligent infliction of emotional distress (NIED) or outrage and cannot cite to any other act of employee negligence to justify a claim for negligent supervision. *Def.'s Mem. of Law in Supp.*, ECF No. 32, at 15-18. Plaintiff argues that the facts provided in the complaint demonstrate a claim for NIED or outrage, which can support its negligent supervision claim. *Pl.s Resp.*, ECF No. 33, at 7-8. Otherwise, Plaintiff asserts that the creditor relationship is considered a special relationship that allows Plaintiff to seek economic damages under a negligence theory. *Id.* at 7. The Court disagrees.

In order for a plaintiff to sustain a claim under common law negligence and the WVCCPA, the plaintiff needs to establish that the common law claim exists separately from the WVCCPA. *See Casillas v. Tuscarora Land Co.*, 412 S.E.2d 792, 795 (W. Va. 1991). These claims can involve the same set of facts, but the negligence claim must be able to exist separately from the WVCCPA claim. *See Pemberton v. U.S. Bank*, Civ. No. 5:11-00630, 2012 WL 37113, at *3

(S.D.W. Va. Jan. 5, 2012). As Plaintiff argues that the WVCCPA creates the special relationship required to sustain a common law negligence claim, the claims cannot exist separate from one another. Therefore, a traditional claim for common law negligence asserted generally against Defendant cannot be sustained.

Plaintiff next tries to retain the claim for negligence by citing the elements for outrage. As fully examined by this Court in previous cases, claims alleging oppressive or abusive conduct by a debt collector rarely rise to the level of extreme and outrageous conduct necessary to sustain a claim for outrage. *See Baldwin v. Wells Fargo Fin. Nat'l Bank*, Civ. No. 3:16-4841, 2017 WL 63026, at *3 (S.D.W. Va. Jan. 5, 2017) (permitting an outrage claim to continue at motion to dismiss stage but noting the high standard). Here, Plaintiff's evidence does not demonstrate that the number or the nature of calls were such to cause a reasonable person to find the conduct surpassing the bounds of human decency. *See id.* (discussing outrage elements). Further, Plaintiff removed its claim for outrage against Defendant in its Second Amended Complaint, and the Court will not allow Plaintiff to construe its latest complaint to involve the same allegations previously removed. *See Pl.'s Compl.*, ECF No. 1, at ¶¶ 42-45.

Regarding a possible NIED claim, the Court likewise has discussed the inapplicability of NIED claims to similar conduct in previous cases. *See Baldwin*, 2017 WL 63026, at *4 ("This case is based around debt collection practices and contains no allegations to support a bystander theory or any of the other limited NIED claims."). The Court will not delve into another thorough discussion on why an NIED claim fails in this case, instead directing Plaintiff to the full analysis in *Baldwin*.

The complaint itself details only a negligence claim for supervision, but this type of action also fails as a matter of law. The Court thoroughly explains in *Carroll v. USAA Savings Bank*

that West Virginia does not recognize a separate claim for negligent supervision or training without having a valid underlying claim for employee negligence. Civ. No. 3:16-11120, 2017 WL 811491, at *3 (S.D.W. Va. Mar. 1, 2017) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). Negligence requires a showing of duty, breach of duty, causation, and injury. *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939). Plaintiff's complaint lacks any mention of these elements, and Plaintiff has produced no evidence to the Court in this summary judgment motion to sustain the claim for a jury. The actions alleged in the complaint further involve alleged intentional conduct rather than any negligent conduct. The Court, thus, cannot find justification for an underlying claim of negligence within the complaint. Accordingly, the Court **GRANTS** Defendant's Motion on Count III.

### d. Count IV: Invasion of Privacy Claim

Plaintiff's last claim against Defendant is a common law invasion of privacy claim, alleging that Plaintiff has a reasonable expectation of privacy to be free from harassing phone calls. *Pl.'s Second Am. Compl.*, ECF No. 38. West Virginia recognizes a right to privacy for the "unreasonable intrusion upon the seclusion of another." *See Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 85 (W. Va. 1985). An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne … intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, … if the intrusion would be highly offensive to a reasonable person.'" *Harbolt v. Steel of West Virginia, Inc.*, 640 F. Supp. 2d 803, 817 (S.D.W. Va. 2009).

Defendant argues that Plaintiff's invasion of privacy claim duplicates the assertions made under West Virginia Code § 46A-2-125(d) and thus cannot be sustained as a matter of law. *Def.'s*

*Mem. of Law in Supp.*, ECF No. 32, at 18.  Defendant asks the Court to look at the invasion of privacy claim through the lens of the WVCCPA, requiring a plaintiff to prove that the calls meet the threshold specified in the statute before successfully pleading an invasion of privacy claim. *See* W. Va. Code § 46A-2-125(d).  The Court disagrees with this analysis.  As previously stated, *Pemberton* allows for both a WVCCPA claim and a common law claim to coexist as long as the claims can exist separately from one another.  *Pemberton*, 2012 WL 37113, at *3.  If the claims must exist separately, the Court cannot require Plaintiff to meet the statutory threshold in order to prove a common law negligence claim.  This Court has recognized that a plaintiff can successfully plead a plausible claim for invasion of privacy when experiencing harassing phone calls.  *See Carroll*, 2017 WL 811491, at *4 (permitting invasion of privacy claim to continue at motion to dismiss stage).  West Virginia generally follows the Restatement (Second) of Torts which recognizes that harassing phone calls can support an invasion of privacy claim.  *See* Restatement (Second) of Torts § 652B, Comment b(5) (1977).  Therefore, if this were at the motion to dismiss stage, the Court would permit Plaintiff's claim to continue.

However, at the summary judgment stage, the Court requires Plaintiff to provide "citations to the record" and "proof of damages" to defeat a motion for summary judgment.  *See Biser*, 211 F. Supp. 3d at 857.  If Plaintiff cannot "offer evidence that the phone calls were made within a short time frame or that they were placed at inappropriate hours", summary judgment is appropriate.  *Adams v. Chrysler Fin. Co., LLC*, No. 5:11-CV-00914, 2013 WL 1385407, at *9 (S.D.W. Va. Apr. 3, 2013) (Berger, J.); *see also Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 819 (S.D.W. Va. 2012) (Copenhaver, J.).  Here, Plaintiff did not cite to the record, did not provide affidavits to support the use of threatening language, and did not offer any evidence for the Court to consider in keeping his invasion of privacy claim.  Defendant, however, provided

the phone call log, which shows that none of the phone calls were placed at inconvenient times and that Defendant called Plaintiff, at most, twice per day. *See Exh. C*, ECF No. 31-3. With the information before the Court, Plaintiff has not met the burden of offering concrete evidence to maintain a cause of action for invasion of privacy. Although Plaintiff argues that a jury should determine the intent behind the phone calls, the Court must have enough evidence to find continuation of the claim warranted. Accordingly, the Court finds that there is not a genuine issue of material fact and that Defendant is entitled to summary judgment on the invasion of privacy claim. The Court, thus, **GRANTS** Defendant's Motion for Count IV.

## IV. Conclusion

The Court finds that there is no genuine issue of material fact and summary judgment is warranted in regards to Counts III and IV in their entirety, as well as portions of Count II's WVCCPA claims. Genuine issues of material fact exist to preclude summary judgment on Count I and Count II's alleged violation under § 46A-2-128. Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment (ECF No. 31).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 17, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE